**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Movant,<br><br>v.<br><br>TOWER MANUFACTURING CORPORATION,<br><br>Respondent. | ACTION TO COMPEL COMPLIANCE WITH SUBPOENA PURSUANT TO FED. R. CIV. P. 45<br><br>Case No. _______________ |

**SHANGHAI ELE MANUFACTURING CORPORATION'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA BY TOWER MANUFACTURING CORPORATION**

This is an action to compel compliance with a subpoena issued by this Court in connection with a case pending in the U.S. District Court for the Middle District of Florida, Shanghai ELE Manufacturing Corporation v. Technology Research Corporation, No. 07-01007-JDW-MSS (the "ELE-TRC Litigation"). The subpoena to Tower Manufacturing Corp. ("Tower") seeks documents concerning a prior litigation between Tower and Technology Research Corporation ("TRC") over the same patent at issue in the ELE-TRC Litigation and are directly relevant to questions of claim construction, infringement, validity, and damages in the pending matter. Tower has nevertheless objected to the production of documents in response to the subpoena on grounds of relevance, confidentiality, undue burden, and undue prejudice. However, as discussed in the attached Memorandum, none of these objections are a sufficient basis to withhold production and the production, in unredacted form, of the following ten sub-categories of documents proposed by ELE should be compelled:

(1) All Markman briefs with exhibits;

(2) All summary judgment briefs with exhibits;

(3) All interrogatory responses (including any supplemental responses);

(4) All expert reports including referenced documents;

(5) All depositions and deposition exhibits;

(6) Any prior art search reports that were produced by either party;

(7) All prior art that was either produced or located by either party;

(8) The Tower/TRC settlement agreement/license and all documents related to its negotiation;

(9) Any other agreements/licenses/etc related to the TRC '337 patent and documents related to their negotiation; and

(10) Confirmation that Tower did not possess any documents related to the '337 Patent as it pertains to Shanghai ELE or any documents referencing Shanghai ELE in the context of the Technology Research Corporation v. Tower Manufacturing Corporation, Civ. No. 05-01455-RAL-TGW (M.D. Fla.) litigation.

The production of documents responsive to these ten sub-categories (the "Subpoenaed Documents") should be compelled because the Subpoenaed Documents are reasonably calculated to lead to the discovery of admissible evidence, their confidentiality will be protected via the Stipulated Protective Order entered in the ELE-TRC Litigation, and it is not unduly burdensome or prejudicial for Tower to produce the Subpoenaed Documents. For the reasons set forth herein, and in the attached Memorandum and accompanying Affidavit of Lawrence T. Stanley, Jr. ("Stanley Aff."), Shanghai ELE respectfully requests that the Court order the production forthwith of the Subpoenaed Documents pursuant to Fed. R. Civ. P. 45(c)(2)(B).

WHEREFORE, Shanghai ELE respectfully requests that this Court grant its Motion to Compel Production of Documents from Non-Party Tower Manufacturing Corporation and compel Tower to produce in unredacted form all documents responsive to the ten "Subpoenaed Documents" sub-categories proposed by ELE.

Respectfully submitted,
**SHANGHAI ELE MANUFACTURING CORPORATION,**
By its attorney:

Jeffrey S. Brenner (By SME #4403)

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Dated: October 26, 2007

CERTIFICATE OF SERVICE

I certify that, on this 26th day of October, 2007, I served a copy of this Motion upon the following counsel for Tower Manufacturing Corporation:

Bruce W. Gladstone, Esq.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

(Via Courier)

John J. Cotter, Esq.
Kilpatrick Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
(Via Federal Express Delivery)

[signature]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHANGHAI ELE MANUFACTURING CORPORATION,

Movant,

v.

TOWER MANUFACTURING CORPORATION,

Respondent.

ACTION TO COMPEL COMPLIANCE WITH SUBPOENA PURSUANT TO FED. R. CIV. P. 45

Case No. _______________

**SHANGHAI ELE MANUFACTURING CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA BY TOWER MANUFACTURING CORPORATION**

This is an action to compel compliance with a subpoena issued by this Court in connection with a case pending in the U.S. District Court for the Middle District of Florida, Shanghai ELE Manufacturing Corporation v. Technology Research Corporation, No. 07-01007-JDW-MSS (the "ELE-TRC Litigation"). The subpoena to Tower Manufacturing Corp. ("Tower") seeks documents concerning a prior litigation between Tower and Technology Research Corporation ("TRC") over the same patent at issue in the ELE-TRC Litigation that are directly relevant to questions of claim construction, infringement, validity, and damages in the pending matter. Tower has nevertheless objected to the production of documents in response to the subpoena on grounds of relevance, confidentiality, undue burden, and undue prejudice. None of these objections, however, are a sufficient basis to withhold production. As discussed below, the documents sought by ELE are reasonably calculated to lead to the discovery of admissible evidence, their confidentiality will be protected via the Stipulated Protective Order entered in the ELE-TRC Litigation, and it is not unduly burdensome or prejudicial for Tower to produce the subpoenaed documents. For the reasons set forth herein, and in the attached Affidavit of

Lawrence T. Stanley, Jr. ("Stanley Aff."), ELE respectfully requests that the Court order the production forthwith of the subpoenaed documents pursuant to Fed. R. Civ. P. 45(c)(2)(B).

## FACTS RELEVANT TO THIS MOTION

In the ELE-TRC Litigation, Shanghai ELE Manufacturing Corporation ("ELE") seeks a declaratory judgment that it has not infringed and is not infringing any valid claim of U.S. Patent No. 6,292,337 ("the '337 Patent") and that each claim of the '337 Patent is invalid. The defendant in the ELE-TRC Litigation, Technology Research Corporation ("TRC"), has asserted a counterclaim alleging that ELE infringes the '337 Patent. The '337 Patent relates generally to an electric system in which power is removed from an appliance when arcing current in excess of a predetermined magnitude occurs. Devices incorporating such systems are commonly referred to as leakage current detection interrupters ("LCDI").

In 2005, Tower was sued by TRC for infringement of the same '337 Patent. (*See* Technology Research Corporation v. Tower Manufacturing Corporation, M.D. Fla. No. 05-01455-RAL-TGW (the "TRC-Tower Litigation")). There, as here, the issue was whether the '337 patent was valid and enforceable and whether the defendant's LCDI product infringed the patent. During the pendency of the TRC-Tower Litigation, TRC and Tower exchanged discovery requests and responses, exchanged expert reports concerning claim construction, infringement contentions and damages, filed claim construction briefs, conducted a Markman hearing, received a claim construction order from the Court, and fully briefed summary judgment on Tower's claim of non-infringement. Before summary judgment could be ruled on, the matter settled.

During the Rule 26 conference in the ELE-TRC Litigation, TRC's counsel suggested that there was no need for a Markman hearing in the present litigation because the key terms from the '337 Patent had already been construed by the same Court in the TRC-Tower Litigation. Stanley Aff. at ¶ 1. ELE thereafter made clear that it believed that documents from the TRC-Tower Litigation were relevant to the ELE-TRC Litigation, including the parties' position on claim construction and infringement contentions. TRC, however, citing the stipulated protective order

from the TRC-Tower Litigation, refused to produce any documents that purported to contain Tower's confidential information.

As such, on August 13, 2007, Shanghai ELE served Tower with a subpoena *duces tecum* requiring production, by no later than August 27, 2007, of twelve categories of documents. Stanley Aff. Ex. A, Schedule A. On August 30, 2007, ELE's counsel sent to Tower's counsel a copy of the Stipulated Protective Order entered by the Court in the ELE-TRC Litigation and specifically noted that "the Protective Order governs the production of potentially confidential information by both parties and non-parties," and that ELE trusted that such protections would address any confidentiality concerns Tower may have. Stanley Aff. Ex. B. Nonetheless, on or about August 31, 2007, Tower objected to the subpoena in its entirety, and refused to produce any documents in connection therewith. Stanley Aff. Ex. C. Tower objected to the subpoena on grounds that the requested documents were irrelevant, confidential to Tower, and that the requests were unduly burdensome and unduly prejudicial.

The parties thereafter conferred multiple times in an effort to narrow the scope of the subpoena. On September 17, 2007, without waiving its right to receive complete responses to the document requests as written, ELE's counsel narrowed the scope of the subpoena by requesting ten sub-categories of documents related to the TRC-Tower Litigation -- documents that are entirely within the possession of counsel. Stanley Aff. Ex. D. Those categories of documents were:

(1) All Markman briefs with exhibits;

(2) All summary judgment briefs with exhibits;

(3) All interrogatory responses (including any supplemental responses);

(4) All expert reports including referenced documents;

(5) All depositions and deposition exhibits;

(6) Any prior art search reports that were produced by either party;

(7) All prior art that was either produced or located by either party;

(8) The Tower/TRC settlement agreement/license and all documents related to its negotiation;

(9) Any other agreements/licenses/etc related to the TRC '337 patent and documents related to their negotiation; and

(10) Confirmation that Tower did not possess any documents related to the '337 Patent as it pertains to Shanghai ELE or any documents referencing Shanghai ELE in the context of the Technology Research Corporation v. Tower Manufacturing Corporation, Civ. No. 05-01455-RAL-TGW (M.D. Fla.) litigation.

On September 25, 2007, Tower's counsel responded that, subject to its objections, it was willing to produce (1) "responsive Markman and summary judgment briefs and exhibits filed under seal;" (2) "responses to TRC's interrogatories to the extent responsive;" (3) "responsive expert reports;" (4) "responsive transcripts of Tower witnesses and accompanying exhibits;" and (5) "Tower's prior art to the '337 Patent." Stanley Aff. Ex. E. In addition, Tower stated that it would not object to TRC producing the TRC-Tower settlement agreement and Tower confirmed that that it did not have any prior art search reports, any other licensing agreements related to the '337 Patent, or documents responsive to original request number 10. Tower did, however, agree to produce any documents referencing Shanghai ELE in the context of the TRC-Tower Litigation.

Despite its promises to the contrary, Tower failed to follow through with its production commitments. On October 10, 2007, Tower only produced its Responsive Claim Construction Brief, Tower's Interrogatory Responses, Tower's technical expert reports on claim construction and non-infringement, Tower's damages expert report, the deposition transcript of Tower's technical expert and select prior art references. Stanley Aff. at ¶ 8. Other than the prior art references, each of the handful of documents produced were redacted, some so heavily that almost no substantive information remained. Further, Tower failed to produce *any* of the promised summary judgment briefs. *Id.*

In an effort to avoid Court intervention, ELE's counsel contacted counsel for Tower and again explained why it believes the subpoenaed documents are relevant and not protected from disclosure. Stanley Aff. Ex. F. Further, to alleviate any burden on Tower whatsoever, instead of having Tower produce documents, ELE proposed that Tower simply send a letter to TRC authorizing TRC to produce documents designated "confidential" or "highly confidential" by Tower in the TRC-Tower Litigation (having already repeatedly assured Tower that such documents would receive the same confidentiality protection that they had received in the TRC-Tower Litigation pursuant the Stipulated Protective Order already entered in the ELE-TRC Litigation). *Id.* Tower, however, rejected that offer, refused to put the production burden on TRC and maintained its refusal to produce the subpoenaed documents.[1] Stanley Aff. at ¶ 10. As such, Tower's refusal to comply with the subpoena has necessitated the present motion.

## ARGUMENT

### I. THE SUBPOENAED DOCUMENTS ARE RELEVANT TO THE LITIGATION

The subpoenaed documents relate to positions TRC has taken on the same patent in connection with alleged infringement of a similar product, and are therefore unquestionably relevant to the instant litigation and their production should be compelled. Rule 45 permits discovery of non-parties with the same breadth as may be discovered from parties under Rule 26. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("it is well settled … that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."); 9A Wright & Miller, Federal Practice & Procedure § 2459, at 42 (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34). Indeed, a non-party responding to a Rule 45 subpoena has the same disclosure obligations as parties to the subject litigation. *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541

[1] Meanwhile, TRC has refused to produce any documents designated confidential or highly confidential by Tower in the previous litigation, citing the Protective Order there.

n. 2 (N.D. Ill. 2004), *citing* Fed. R. Civ. P. 45, Adv. Comm. Notes, 1991 Amendments ("Rule 45 draws no distinction between parties and non-parties concerning the scope of discovery.")

Of course, pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The term "relevant" should be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)); *see also Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 157 (N.D. Ill. 1993) ("[R]elevance for discovery purposes is much broader than relevance for evidentiary purposes . . . ."); *Transcor, Inc.*, 212 F.R.D. at 591 ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party.") (citation omitted).

As this Court's "only connection with [this] case is supervision of discovery ancillary to an action in another district," it "should be 'especially hesitant to pass judgment on what constitutes relevant evidence.'" *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed.Cir.1987), *citing Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961); *see also Dorel Juvenile Group, Inc. v. Summer Infant, Inc.*, 2006 WL 2927321, *3 (D.R.I. Oct. 11, 2006), *citing Horizons*, 290 F.2d at 425 ("Local courts whose only connection with a case is the supervision of the taking of depositions ancillary to an action elsewhere should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.") As such, "[i]f relevance is unclear, Rule 26(b)(1) indicates that the court should be permissive." *Elm Energy and Recycling* 1996 WL 596456, *11 (N.D. Ill. Oct. 9, 1996), *citing*

*Truswal*, 1211-1212; *see also Insulate America v. Masco Corp.*, 227 F.R.D. 427, 432 (W.D.N.C. 2005) ("Insomuch as courts reviewing ancillary discovery matters are frequently not familiar with the main action, they should be permissive where there is doubt whether the requested discovery can lead to the discovery of admissible evidence.").

Here, there is no doubt that the requested documents[2] are relevant to the ELE-TRC Litigation under the broad scope of Rule 26, as the Subpoenaed Documents are reasonably calculated to lead to the discovery of admissible evidence. ELE discusses below the outstanding categories of Subpoenaed Documents that Tower has failed to produce in full, unredacted form.

### A. All Markman Briefs with Exhibits

As previously discussed, since both litigations involve alleged infringement of the same patent, TRC has asserted that the claim construction from the TRC-Tower Litigation should apply in the ELE-TRC Litigation. While ELE disagrees that it is estopped from seeking an alternative claim construction,[3] the relevance of the claim construction from the TRC-Tower Litigation is certain. In fact, if ELE so wished, ELE could assert that collateral estoppel prevents *TRC* from arguing for a different claim construction. *See Abbott Laboratories v. Impax Laboratories, Inc.*, 2003 WL 1563426, *3-4 (N.D. Ill. Mar. 26, 2003) (applying collateral estoppel to claim construction ruling from prior litigation where defendant argued for estoppel).

Moreover, whether or not collateral estoppel applies, it is certainly reasonably possible that the Court in the ELE-TRC Litigation will consider the claim construction ruling and claim construction evidence on the very same patent from the TRC-Tower Litigation. *Lamps Plus, Inc. v. Dolan*, 2003 WL 22435702, *2 (N.D. Tex. Aug. 26, 2003) ("While this Court agrees that

---

[2] For purpose of this motion, ELE will focus on the sub-categories of documents highlighted in its September 17, 2007 email to Tower (hereafter, the "Subpoenaed Documents").

[3] Collateral estoppel should not apply to ELE because it was not a defendant to the TRC-Tower Litigation. *See Lamps Plus, Inc. v. Dolan*, 2003 WL 22435702, *1 (N.D. Tex. Aug. 26, 2003) ("Because the defendants here were not parties in the prior litigation, the fourth requirement [for collateral estoppel] cannot be met, and collateral estoppel cannot apply to prohibit relitigation of the claim construction."); *Texas Instruments, Inc. v. Linear Technologies Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002) ("while courts may defer to previous claim constructions ... such decisions are made on a case by case basis, at the discretion of the court").

neither collateral estoppel nor *stare decisis* dictate the adoption of the Florida court's claim construction on the patent at issue in this case, this Court finds the Florida court's determination instructive. . . . After considering the parties' arguments and evidence presented at the Markman hearing, the briefs and claim construction statements, all related documents, and the Florida court's claim construction," the Court issued its claim construction ruling). Accordingly, where the Court in the ELE-TRC Litigation may consider how the Court from the TRC-Tower Litigation construed the claims, ELE is entitled to discover all relevant documents to that claim construction ruling. Tower cannot contend that the unredacted claim construction briefs are irrelevant under the broad scope of discovery, and therefore this court should compel the production of the claim construction briefs in unredacted form.[4]

**B. All Summary Judgment Briefs with Exhibits**

TRC has also refused to produce any documents related to its non-infringement contentions, including any of the summary judgment briefs filed in connection with those contentions. Tower has maintained that its non-infringement contentions are irrelevant because Tower's products are not at issue in the ELE-TRC Litigation. Tower's position, however, misses the point.

"An infringement analysis is a two-step process. The first step is determining the meaning and scope of the patent claims allegedly infringed, also known as claim construction. . . . Courts must construe the claims as a matter of law before turning to the second step, the factual application of those claims to the accused products." *Abbott Laboratories v. Impax Laboratories, Inc.*, 2003 WL 1563426, *3 (N.D. Ill. Mar. 26, 2003). Thus, if the claim constructions briefs are relevant -- which they are -- then the summary judgment briefs are likewise relevant because claim construction is part and parcel of an infringement analysis.

The only summary judgment brief from the TRC-Tower Litigation which was publicly filed, TRC's Sur-Reply Brief in Opposition to Tower's Motion for Summary Judgment (Stanley

---

[4] To the extent Tower's redactions were based on confidentiality concerns, that objection is addressed in Section III, *infra*.

Aff. Ex. G), highlights the relevance of the summary judgment briefs to the ELE-TRC Litigation. Notably, TRC's Sur-Reply brief includes the following language:

> Dr. Eisenstadt has never excluded the combination of the reset button, LED, and solenoid as comprising a test circuit. Rather, as a technical (and not legal) expert, he initially found a test circuit in Tower's LCDI consisting of the test switch. He did not look for additional infringing structures until after the Court ruled that the claimed test circuit must be different than the sensing lead integrity checking means. Upon examining Tower's LCDI in view of the Court's ruling and the deposition of Tower's chief engineer (taken after the claim construction hearing), he found that it still infringed TRC's patent.

TRC Sur-Reply at A2-A3. This language suggests that TRC took one position with respect to claim construction throughout the case (namely, that a single component within an LCDI product could meet two claim limitations simultaneously), but after the Court rejected TRC's proposed claim construction and held that the two claim limitations could not be satisfied by a single component within an LCDI, TRC changed its position and then argued that the combination of *multiple* components of an LCDI meet that same claim limitation. Particularly in view of TRC's last minute reversal of position on infringement following the Court's claim construction ruling, the parties' respective application of the claim construction ruling is relevant under the exceedingly broad scope of discovery, as these positions are likely to lead to admissible evidence.

Indeed, the positions taken by TRC in the TRC-Tower Litigation are not only relevant, but they may even be used as admissions against TRC or used as a means to impeach TRC in the ELE-TRC Litigation. *See Hardy v. Johns-Mansville Sales Co.*, 851 F.2d 742, 745 (5th Cir. 1988) ("there is a well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party."); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that [civil litigation] pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party. . . . A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that

version, safe in the belief that the trier of fact will never learn of the change in stories.") (citations omitted); *Fuller v. King*, 204 F.2d 586, 590 (6th Cir. 1953) ("It is an accepted rule of evidence that, under certain conditions, statements contained in pleadings in another action, prepared by counsel employed to handle such action, are quasi-admissions, and while not conclusive are nevertheless admissible in evidence[.]").

For example, if TRC and its expert argued that certain components in an LCDI meet claim limitations but other components do not meet claim limitations, then ELE may be able to prevent TRC from backtracking from that position if TRC later tries to change its view to capture additional components of an LCDI within the scope of the patent claims. As potentially *admissible* evidence, the summary judgment briefs and positions taken by TRC are plainly *relevant* in the subject litigation because the documents are likely lead to discoverable evidence whether or not the documents are themselves admissible evidence. *Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 157 (N.D. Ill. 1993) ("[R]elevance for discovery purposes is much broader than relevance for evidentiary purposes . . . .").

**C. All Expert Reports including Referenced Documents**

While Tower did produce respective copies of its expert reports on claim construction, non-infringement, and damages, those copies were heavily redacted and did not at all comply with Tower's production obligations under Rules 26 and 45. Indeed, using the same logic that Tower used in refusing to produce any of its summary judgment briefs, Tower also redacted its expert reports on claim construction and non-infringement. However, for the reasons discussed *supra* at Part I.A-B., Tower's relevance objection to producing documents related to its non-infringement contentions is grossly misplaced, and those expert reports should be produced in unredacted form.

Furthermore, Tower also heavily redacted its expert report on damages. Tower cannot seriously contend that this expert damages report is "irrelevant" under the broad scope of discovery. TRC has alleged that it is entitled to an award of damages including lost profits, price erosion and lost sales. The case law makes clear that in calculating a reasonable royalty, factors

that should be considered include "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty" and "opinion testimony of qualified experts." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970). While "[a] royalty, if any, resulting from settlement of an infringement suit between [plaintiff] and a third party, should not be considered evidence of an '*established*' royalty," such royalty is nonetheless plainly *relevant* under the broad scope of discovery. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164, n. 11 (6th Cir. 1978) (emphasis added); *see also Studiengesellschaft Kohle v. Dart Indus.*, 862 F.2d 1564 (Fed. Cir. 1988) (affirming Master's finding that royalty reached in settlement in a prior litigation was relevant and admissible even if Master gave it little weight). As such, Tower cannot rightfully refuse to produce its expert report on damages based upon a relevance objection.

Accordingly, the Court should reject Tower's relevance objection with respect to its expert reports, including referenced documents, and compel Tower to produce the same in unredacted form.

### D. All Prior Art Either Produced or Located by Either Party

Tower apparently does not dispute the relevance of prior art that was produced or located by either party in the TRC-Tower Litigation, as Tower expressly agreed to produce its prior art and in fact did produce *four* prior art patents in unredacted form in response to the subpoena. In an interrogatory response in the ELE-TRC Litigation, however, TRC listed over four dozen patents that were "cited in prior litigation by Tower Manufacturing Corporation's expert as relevant to the validity of the Patent-in-Suit." Stanley Aff. Ex. H. As such, ELE is dubious that these four patents encompass all of the prior art that was produced or located by either party in the TRC-Tower Litigation. To the extent not already produced, ELE requests that the Court compel Tower to comply with the subpoena request directed towards prior art and produce all prior art that was produced or located by either party in the Tower-TRC Litigation.[5]

---

[5] ELE does not seek production of prior art search reports because TRC has expressly represented that none exist. *See* Letter from Tower's counsel dated September 25, 2007 (attached as Stanley Aff. Ex. E).

### E. All Interrogatory Responses (including any supplemental responses) and Depositions and Deposition Exhibits

The interrogatory responses served by Tower and TRC in that litigation touch upon the core of the instant litigation, as those responses address, *inter alia*, the scope of claim construction, invalidity contentions, prior art, non-infringement contentions, and damages. While Tower did produce one set of responses to TRC's interrogatories, Tower again heavily redacted the responses and did not produce any supplemental responses. Tower should be compelled to produce all interrogatory responses from the TRC-Tower Litigation in unredacted form.

Similarly, the depositions of each party's witnesses also go to the core of the TRC-Tower Litigation. While Tower acknowledged that TRC deposed four Tower witnesses and one Tower expert witness: Mr. Chepur Rao, Mr. Victor Aromin, Mr. Kenneth LaLiberte, Mr. Louis Shatkin, and Dr. Thomas Kleim, Tower only produced its expert witness, Dr. Kleim's deposition transcript, which again Tower heavily redacted, and Tower did not produce any depositions of TRC witnesses. Tower's basis for refusing to produce the additional deposition transcripts was that the depositions "are directed to Tower products and business operations, and not the '337 patent."

Under the broad scope of discovery, Tower cannot rightfully limit its production to only documents it considers "related to the '337 patent." Rather, for the reasons discussed *supra* Part I.A-D, the umbrella of relevance extends much further. To the extent the parties' interrogatory responses (and any supplemental responses) and any of the deposition transcripts of their witnesses touch upon or discuss claim construction, invalidity contentions, prior art, non-infringement contentions, or damages, those responses and transcripts should be produced in unredacted form.[6]

---

[6] ELE notes that it must seek all interrogatory responses and deposition transcripts from Tower because Tower has refused to authorize TRC to produce them, and absent such an agreement TRC has made clear that it will not produce any documents that Tower designated confidential of highly confidential.

### F. Documents Referencing ELE in the context of the TRC-Tower Litigation

Tower also does not appear to object on the ground of relevance to ELE's request for documents referencing ELE in the context of the TRC-Tower Litigation, as Tower expressly agreed to produce documents responsive to this request. However, based upon Tower's scant document production, its is uncertain whether Tower fulfilled its promise to produce all responsive documents to this request, and if it did, whether it redacted responsive information. As such, ELE also seeks an Order compelling Tower to produce documents that it expressly promised to produce, including any documents referencing ELE in the context of the TRC-Tower Litigation, in unredacted form.

In summary, every man (and company) is entitled to his (its) evidence, and ELE is entitled to discover the subpoenaed documents. *United States v. Nixon*, 418 U.S. 683, 709 (1974) ("The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. . . . . Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.") Accordingly, Tower cannot rightfully refuse to produce any of the subpoenaed documents on the basis of relevance.

## II. TOWER'S CONFIDENTIALITY CONCERNS DO NOT JUSTIFY WITHHOLDING THE SUBPOENAED DOCUMENTS

With a protective order in place that expressly covers third party productions, Tower's confidentiality concerns are addressed and plainly do not outweigh ELE's right to obtain necessary discovery. While both Rule 26 and Rule 45 protect trade secrets, that protection is not absolute. *Federal Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) ("There is no absolute privilege for trade secrets and similar confidential information."). Indeed, "[o]rders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties." *Id.* at 362 n. 24. In the context of a Rule 45 subpoena, "[t]he party moving to quash a subpoena under Rule 45(c)(3)(B)(i) has the burden to establish

that the information sought is confidential and that its disclosure will result in a clearly defined and serious injury to the moving party." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592 (D. Kan. 2003); *see also Elm Energy & Recycling (U.K.) Ltd. v. Basic*, 1996 WL 596456, *7 (N.D. Ill., 1996) ("The party moving to quash a subpoena bears the burden of proving that the subpoena is unreasonable or oppressive . . . a heavier burden than that required for demonstrating the need for a more limited protection such as a protective order.")

Here, Tower, in conclusory fashion, has refused to produce subpoenaed documents on the basis that disclosing the documents would reveal Tower's "technical or business information." Stanley Aff. Ex. E. Tower has utterly failed to provide any explanation for how its "technical or business information" is even confidential at all, let alone how its disclosure would cause a "competitive injury," or any injury at all. *See Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 41 (S.D.N.Y. 1992) ("a party asserting that discovery will cause competitive injury because of the revelation of trade secrets . . . cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure."). As such, Tower cannot rightfully refuse to produce the subpoenaed documents on this basis.

Moreover, it is suspect whether many of the documents requested -- such as the claim construction briefs, expert report on non-infringement, or summary judgment briefs -- truly disclose "confidential" information protectable under Rule 45. For example, Tower heavily redacts its Responsive Claim Construction Brief. At page 13, in setting forth Tower's proposed claim construction for the term "sensing lead," Tower redacts two paragraphs. Even if Tower had a proper basis to designate as "confidential" the basic product information that is likely contained in these paragraphs -- which is doubtful because it is difficult to conceive how genuinely confidential information plays a role in construing the '337 patent -- there is no legitimate basis for Tower to contend that the disclosure of the Subpoenaed Documents would cause any significant injury -- competitive or otherwise. Similarly, Tower redacts the entire non-infringement analysis of its expert's report. It is likewise questionable how an analysis

explaining how a product does not meet limitations of a patent constitutes confidential information -- particularly given that the accused device is publicly available and can easily be cut open to see how the device works.

In spite of the dubious and vague nature of its confidentiality concerns, however, ELE is willing to give Tower the benefit of the doubt and treat the information as confidential or highly confidential pursuant to the Stipulated Protective Order already entered in the ELE-TRC Litigation. Such protection is more than enough to address Tower's claimed concerns. Indeed, "[i]t is well settled that where information sought is relevant and necessary to the presentation of the case, the fact that such information constitutes a trade secret need not bar discovery. When the Court directs such discovery, it may impose special conditions for the protection of the party required to answer." *Spartanics, Ltd. v. Dynetics Engineering Corp.*, 54 F.R.D. 524, 525-26 (N.D. Ill. 1972) (limiting disclosure of confidential information to trial counsel and independent experts); *see also Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) ("Protective orders that limit access to certain documents to counsel and experts only are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information.").

There can be no serious argument that disclosure under a rigorous protective order is somehow insufficient. Quite the contrary, all of the information sought from Tower here was produced by Tower to its direct competitor TRC in the TRC-Tower Litigation. There has been no hint of an argument as to why disclosure under a protective order in the TRC-Tower Litigation was acceptable but disclosure under a virtually identical protective order in the ELE-TRC Litigation is not.

The Subpoenaed Documents contain basic, publicly available product information, and will receive the same confidential treatment (or greater protection) that they received in the TRC-Tower Litigation. Tower, thus cannot show (and has failed at even attempting to show) any competitive injury that would result from the disclosure of its non-infringement positions. Accordingly, this Court should compel Tower to produce the Subpoenaed Documents subject to

the protections afforded under the Stipulated Protective Order already entered in the ELE-TRC Litigation.

## III. TOWER WILL NOT BE UNDULY BURDENED BY COMPLYING WITH THE SUBPOENA

Tower's assertion that it will be unduly burdened by complying with the subpoena, especially as narrowed to the Subpoenaed Documents, is baseless. Tower's position ignores that ELE's proposed narrowed production of the ten sub-categories call for documents all entirely *within the custody of counsel*. *See Jans ex rel. Jans v. The Gap Stores, Inc.*, 2006 WL 2691800 (M.D. Fla. 2006) (ordering production of documents from prior litigation that are within possession of counsel and rejecting plaintiff's undue burden argument). Indeed the subject documents are no doubt well-organized within counsel's TRC/Tower case file.[7] Tower does not need to spend significant resources searching and reviewing documents. Instead, its counsel merely needs to pull its litigation file and produce the Subpoenaed Documents, which are not at all voluminous, again being limited to ten narrow categories of documents that are readily available for production. There is no undue burden here.

## IV. TOWER WILL NOT BE UNDULY PREJUDICED BY COMPLYING WITH THE SUBPOENA

Tower also objects to producing the Subpoenaed Documents on the basis that Tower will be "unduly prejudiced" by this production because there is a litigation pending in the District of Rhode Island between Tower and ELE concerning a different patent relating to similar technology (Tower Manufacturing Corporation v. ELE manufacturing Corporation, D.R.I., No. 06-00170-S-DLM) (the "Tower-ELE Litigation"). Tower has not expanded on its reasoning for

---

[7] What's more, ELE even offered a solution that would alleviate *any* alleged burden on Tower by removing Tower from the dispute and putting all of the production burden on TRC. Specifically, in light of TRC's refusal to produce any documents from the TRC-Tower litigation that purport to contain Tower confidential information, ELE proposed that Tower simply send a letter to TRC authorizing TRC to produce documents that were previously produced by Tower in the TRC-Tower Litigation and that such documents, pursuant to the Stipulated Protective Order, would receive the same protection in the ELE-TRC Litigation as they received in the TRC-Tower Litigation. Tower refused this proposal, thus necessitating Tower's continued involvement in discovery in the ELE-TRC Litigation.

this position -- a position that is dubious at best. The Tower-ELE litigation is pending in this Court and is subject to a motion to dismiss on jurisdictional grounds. If the case is dismissed on jurisdictional grounds, then that will be the end of the litigation, and Tower's disclosure will not prejudice it in the Tower-ELE Litigation -- particularly given that Tower may designate the documents as Attorneys' Eyes Only. If, on the other hand, Tower survives the motion to dismiss, then the very information that Tower is trying so desperately to prevent from being disclosed, will nevertheless be disclosed to ELE in that litigation. As such, Tower cannot seriously contend that it will be "unduly prejudiced" by complying with a subpoena that requires its counsel to produce documents already within counsel's possession that merely disclose basic, publicly available product information.

## CONCLUSION

For the foregoing reasons, Shanghai ELE respectfully requests that this Court grant its Motion to Compel Production of Documents from Non-Party Tower Manufacturing Corporation and compel Tower to produce all documents responsive to the ten "Subpoenaed Documents" sub-categories proposed by ELE. *See supra*, pp. 3-4.

Respectfully submitted,
**SHANGHAI ELE MANUFACTURING CORPORATION,**
By its attorney:

Jeffrey S. Brenner (By SMR 4403)

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Dated: October 26, 2007

CERTIFICATE OF SERVICE

I certify that, on this 26th day of October, 2007, I served a copy of this Memorandum upon the following counsel for Tower Manufacturing Corporation:

Bruce W. Gladstone, Esq.
Cameron & Mittleman
56 Exchange Terrace
Providence, RI 02903

(Via Courier)

John J. Cotter, Esq.
Kilpatrick Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
(Via Federal Express Delivery)

[signature]