BINGHAM

Lawrence T. Stanley, Jr.
Direct Phone: 617.951.8721
Direct Fax: 617.951.8736
lawrence.stanley@bingham.com

October 12, 2007

**Via Email**

Larissa S. Bifano
K&L Gates
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111-2950

**Re: *Shanghai ELE Manufacturing Corp. v. Technology Research Corporation*, M.D. Fla., C.A. No. 07-01007-JDM-MSS**

Dear Larissa:

Pursuant to Shanghai ELE's continuing effort to narrow or resolve certain disputes concerning Tower's responses and objections to the subpoena that Shanghai ELE served upon Tower on August 16, 2007 in the above-captioned action, I write to set forth certain objections to Tower's October 10, 2007 document production in response to that subpoena.

To start, without waiving its right to receive complete responses to the subpoena as written, Shanghai ELE has made every effort to narrow the scope of the subpoena to categories of documents that Shanghai ELE found acceptable and that Tower was willing to produce. Moreover, Shanghai ELE has made every effort to address Tower's confidentiality concerns with respect to Tower's technical and business information, including by treating Tower's documents in accordance with the two-tiered Stipulated Protective Order entered in the above-captioned case. That Protective Order, which has been provided to Tower, specifically defines "Producing Party" to include third parties, such as Tower, and it allows such third parties to designate information as "Confidential" or "Confidential--Attorneys' Eyes Only." *See* Stipulated Protective Order at 1 ("'Producing Party' is defined to include parties as well as nonparty persons or entities subject to discovery in this action."). In other words, it provides the same level of protection to Tower's confidential information as the Order in the TRC v. Tower case in which the documents were first produced.

On September 25, 2007, after Shanghai ELE narrowed the categories of documents for Tower to produce, Tower agreed to produce a subset of documents requested in the subpoena, including Markman and summary judgment briefs and exhibits filed under seal, Tower's responses to TRC's interrogatories, expert reports, transcripts of Tower witnesses and accompanying exhibits, and Tower's prior art to the '337 patent. Tower did not follow through on that commitment. Rather, on October 10,

Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

617.951.8000
617.951.8736
bingham.com

2007, Tower produced only its Responsive Claim Construction Brief, Tower's Interrogatory Responses, Tower's technical expert reports on claim construction and non-infringement, Tower's damages expert report, the deposition transcript of Tower's technical expert and select prior art references, many of which have been heavily redacted throughout. Tower did not produce any of the summary judgment briefs at all.

In response to Shanghai ELE's request for a meet and confer concerning Tower's production, Tower requested that Shanghai ELE set forth its objections to Tower's production in writing. Shanghai ELE attempts to do so herein. However, it is difficult to set forth specific objections to the redactions because Shanghai ELE does not know specifically what information was redacted. Indeed, many of the redactions are specious at best. For example, Tower heavily redacts its Responsive Claim Construction Brief. At page 13, in setting forth Tower's proposed claim construction for the term "sensing lead," Tower redacts two paragraphs. Even if Tower had a proper basis to designate as "confidential" the basic product information that is likely contained in these paragraphs, it again has no basis to refuse to provide the unredacted version as any confidential information will be subject to the Protective Order. Likewise, Tower heavily redacts the section concerning the "Structure of the 'sensing lead integrity checking means'" at pages 17-19. Again, while it is difficult to conceive how genuinely confidential information plays a role in construing the '337 patent, even if it did, the Protective Order ameliorates any legitimate concern over its production.

Furthermore, Tower also heavily redacted its technical expert's report on non-infringement, redacting the expert's entire non-infringement analysis, and Tower refused to produce ***any*** of the summary judgment briefs. Despite agreeing on September 25, 2007 to produce "responsive Markman and summary judgment briefs" and "responsive expert reports," we understand that Tower is refusing to produce the summary judgment briefs and its technical expert's non-infringement analysis on the basis that those briefs and expert report allegedly are "not related to claim construction," "are irrelevant to whether Shanghai ELE infringes the '337 patent," and " are unduly burdensome and prejudicial" for Tower to produce such information. Like any alleged concern over disclosure of confidential information, these arguments are also without merit. First, the summary judgment briefs and non-infringement analysis are plainly relevant. TRC has suggested that a Markman hearing in its case with Shanghai ELE is unnecessary because a court has already construed the claims of the '337 patent in the TRC v. Tower litigation. Indeed, in the TRC v. Tower litigation, Tower moved for summary judgment for non-infringement based on the Court's claim construction -- the same claim construction that TRC asserts applies in the above-captioned case. The parties' proposed ***application*** of the Court's claim construction in the TRC v. Tower litigation is undoubtedly relevant under the broad scope of discovery under the Federal Rules. Second, it is not unduly burdensome or prejudicial for Tower to produce the requested information. All of the documents are within the possession of counsel and Tower may designate all of the information as Attorneys' Eyes Only. There is simply no legitimate basis for Tower's refusal to produce the requested information.

Tower's refusal to produce the summary judgment briefs and the other documents in unredacted form has left Shanghai ELE no choice but to move to compel. To date, TRC has refused to produce any confidential information of Tower that is protected under the Protective Order entered in the TRC v. Tower litigation, and Tower has not only refused to produce TRC's documents or information designated confidential, but it has also refused to produce its own "technical or business information" (not even, we note, limited to what it claims is not generally known to or accessible by the public). Accordingly, it has been necessary for Shanghai ELE to seek documents from both Tower and TRC.

In a final effort to avoid Court intervention, Shanghai ELE proposes that Tower immediately send a letter to TRC authorizing TRC to produce documents designated "confidential" or "highly confidential" by Tower in the TRC v. Tower litigation. Such documents will receive the same confidentiality protection that it received in the TRC v. Tower litigation. If Tower agrees to this proposal, Shanghai ELE will agree to hold in abeyance its motion to compel subject to review of TRC's production (reserving the right to seek documents from Tower which are not produced by TRC). Failing that, Shanghai ELE will have no choice but to move to compel.

We look forward to speaking further on Tuesday, October 16, 2007 at 2:00pm.

Sincerely yours,

Lawrence T. Stanley, Jr.

cc: Victor H. Polk, Jr., Esq.
Tony D. Chen, Esq.
Joshua M. Dalton, Esq.