IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Shanghai ELE Manufacturing Corporation,<br>Movant,<br>v.<br>Tower Manufacturing Corporation,<br>Respondent. | Case No. 1:07-mc-00076-S-DLM |

**TOWER'S OBJECTION TO SHANGHAI ELE'S**
**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

Tower Manufacturing Corporation objects to Shanghai ELE's Motion to Compel Compliance with Subpoena, largely on the grounds that Shanghai ELE has failed to establish that the requested documents are relevant and necessary in the underlying Shanghai ELE v. TRC action in Florida.[1] Here, Shanghai ELE seeks from Tower further discovery beyond that Tower has already produced, for use in Shanghai ELE's patent case against Technology Research Corp. ("TRC"), against whom Tower has previously settled two patent infringement cases. Because Tower already has produced to Shanghai ELE over 600 pages of responsive confidential and non-confidential information as required by the Federal Rules and the subpoena, Tower should not be required to produce anything more.

[1] Shanghai ELE's Motion papers and this Objection refer to this subpoena enforcement action and four patent infringement actions. They include:

1. Shanghai ELE Mfg. v. Tower Mfg., No. 1:07-mc-00076-S-DLM (D.R.I. filed Oct. 29, 2007) ("this action").

2. Shanghai ELE Mfg. v. Tech. Research Corp., No. 07—1—7-JDW-MSS (M.D. Fla. filed June 11, 2007) (the "Shanghai ELE v. TRC action" or "underlying action").

3. Tower Mfg. v. Tech. Research Corp., No. 06-212-T-DLM (D.R.I. filed May 8, 2006).

4. Tech. Research Corp. v. Tower Mfg., No. 8:05-cv-01455-RAL-TGW (M.D. Fla. filed Aug. 3, 2005) (the "TRC v. Tower action").

5. Tower Mfg. v. Shanghai ELE Mfg., No. 06-170S (D.R.I. filed Apr. 11, 2006) (the "Tower v. Shanghai ELE action").

## I. SHANGHAI ELE'S DEMANDS FOR ADDITIONAL CONFIDENTIAL TOWER INFORMATION SEEK IRRELEVANT MATERIAL AND UNDULY BURDEN TOWER

Where relevance is at issue, as here, the applicable law is the law of the Federal Circuit. Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc., 813 F.2d 1207, 1212 (Fed. Cir. 1987) ("a determination of relevance implicates the substantive patent law of patent validity and infringement"). When a subpoena to a non-party seeks confidential commercial information, as this one does, "Fed.R.Civ.P. 45(c)(3)(B) places the burden on the demanding party to show a substantial need for the information that cannot otherwise be met without undue hardship." Fort James Corp. v. Sweetheart Cup Co., No. Civ.A.97-C-1221, 1998 WL 709813, at *2 (S.D.N.Y. Oct. 8, 1998)(citing Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424-25 (Fed. Cir. 1993)). Thus, "[w]here proof of either relevance or need is not established, discovery is properly denied." Am. Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 743 (Fed. Cir. 1987) (emphasis in original). For each of the five categories of documents identified in its Motion, Shanghai ELE fails to demonstrate the minimum level of relevance required under Fed.R.Civ.P. 26(b)(1).

Even if relevant, Shanghai ELE has not established a substantial need for additional production that outweighs the undue burden and potential hardship to Tower in producing still more confidential information to Shanghai ELE. Discovery of relevant information is prohibited where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefits. Micro Motion Inc. v. Kane Steel, Inc., 894 F.2d 1318, 1323 (Fed. Cir. 1990). Among the factors that weigh against production is the fact that Tower is not a party to the underlying Shanghai ELE v. TRC action. Katz, 828 F.2d at 424 ("nonparty status may be considered by the court in weighing the burdens imposed").

Heightening the concern about further confidential production, not only are Tower and Shanghai ELE direct competitors (Am. Standard, 828 F.2d at 741 ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor")), but they are

litigating against each other in the Tower v. Shanghai ELE action, which involves the same area of technology in which Shanghai ELE presently seeks more confidential information. Additionally, the attorneys representing Shanghai ELE in the underlying Shanghai ELE v. TRC action also serve as counsel in the pending Tower v. Shanghai ELE action. See Mannington Mills, Inc. v. Armstrong World Indus., 206 F.R.D. 525, 531 n.10 (D.Del. 2002)("the law firms representing the parties in this action also serve as counsel for their respective clients in the prosecution of patent applications and other proceedings before the Patent and Trademark Office, thus, elevating the concern of harm from such disclosure.").

In view of the undue burden and potential harm to Tower, further discovery of confidential information should be denied.

## II. SHANGHAI ELE PROVIDES NO REASONABLE JUSTIFICATION FOR ITS REQUESTS BEYOND BROAD, CONCLUSORY DEMANDS

### A. Tower Cannot Produce an Unredacted Copy of its Claim Construction Brief from the TRC v. Tower Action Because it is Bound by a Protective Order in the TRC v. Tower Action

Shanghai ELE demands that Tower produce an unredacted version of Tower's patent claim construction (or "Markman") brief from the TRC v. Tower action, ostensibly to expose TRC's claim construction arguments so that Shanghai ELE can construct an estoppel argument against TRC in the underlying Shanghai ELE v. TRC action. In its Motion, Shanghai ELE admits that in its underlying action, Shanghai ELE "could assert that collateral estoppel prevents TRC from arguing for a different claim construction." (Motion, p. 7). Because Tower produced an otherwise complete copy of its claim construction brief, the issue for the Court to decide is whether Tower should be compelled to reveal TRC's claim construction arguments. Shanghai ELE's demand is improper on several levels.

First, Tower redacted its responsive claim construction brief only to the extent that it reflects TRC's claim construction arguments, because producing TRC's information would

violate Tower's duty of confidentiality under the protective order in the TRC v. Tower action. The redacted information originated from TRC's Expert Report of Dr. William R. Eisenstadt and TRC designated that Report confidential in accordance with the protective order. See Exs. A and B. Quite simply, Tower lacks the authority to disclose the information Shanghai ELE demands.[2]

Second, even if Tower were not bound by the protective order in TRC v. Tower, Shanghai ELE's suspicion that the redacted information might contain a TRC admission regarding the '337 patent is too speculative to establish relevance. More is required "than a theoretical argument that the requested information somehow relates" to the underlying action. Micro Motion Inc, 894 F.2d at 1325. Shanghai ELE's suspicion or speculation about statements made by TRC in prior litigation is not a valid basis for discovery.

Third, aside from failing to establish relevance, Shanghai ELE may not have any use for Tower's unredacted Markman brief because Shanghai ELE admits that a claim construction ruling may not be necessary in the underlying Shanghai ELE v. TRC action. Shanghai ELE's Motion notes that "TRC's counsel suggested that there was no need for a Markman hearing in the present litigation because the key terms from the '337 Patent had already been construed by the same Court in the TRC v. Tower Litigation." (Motion, p. 2). If the prior claim construction is adopted, any statements or admissions by TRC regarding the scope of the claims in the '337 in the prior TRC v. Tower action will become moot. Thus, by Shanghai ELE's own admission, the information in Tower's claim construction brief is not necessarily or inherently involved in the underlying action.

Fourth, if Shanghai ELE could establish that TRC's purported statements or admissions were relevant and necessary in the underlying action, Shanghai ELE should be required to first compel discovery from TRC before burdening Tower, a nonparty. "Fed.R.Civ.P. 26(b) . . . expressly acknowledges that a court may limit discovery if it determines that the discovery

[2] In addition to preventing disclosure, the protective order entered in the TRC v. Tower action limits the use of any information covered by the order: "Protected Information may be used only for the purposes of prosecution or defense of claims asserted in this action and for no other purpose whatsoever." Ex. A, ¶10.

sought 'is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 978 (Fed. Cir. 1993). In Haworth, the court refused to allow discovery of nonparty Allsteel because the information sought, namely settlement documents between prior litigants AllSteel and Haworth, was available from party opponent Haworth: "[T]he need for discovery in an ancillary proceeding is diminished when the information is available elsewhere." Id. (citing American Standard, 828 F.2d at 743). The court also observed that, at the time defendant Herman Miller sought to compel production from nonparty Allsteel, Herman Miller had not compelled production from its opponent Haworth. Id. Just like the situation in Haworth in which a party sought to compel production from a nonparty before moving to compel production from its party opponent, Shanghai ELE seeks to compel production of TRC's claim construction arguments from nonparty Tower before seeking to compel its party opponent TRC. Like the demanding party in Haworth, Shanghai ELE has acted prematurely in Rhode Island before proceeding in Florida.

For all these reasons, Tower should not be compelled to produce its claim construction brief from the prior TRC v. Tower action.

### B. Tower's Summary Judgment Brief on Noninfringement from the TRC v. Tower Action Does Not Relate to the Question of Whether Shanghai ELE's Device Infringes

Shanghai ELE's attempt to show relevance of Tower's summary judgment brief on noninfringement in the prior TRC v. Tower action fails, because the Tower device at issue then is not at issue now in the underlying Shanghai ELE v. TRC action. Discovery shall not be permitted on a matter which is not "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Tower's summary judgment motion contains a noninfringement analysis that compares the patent claims of the '337 patent, as the court construed in the TRC v. Tower action, to Tower's then allegedly infringing device. Shanghai ELE already has the court's claim construction order from the prior case and this information is merely reflected in Tower's

brief. The other information in Tower's brief is a comparison of Tower's device to the construed claims and accompanying legal argument. Shanghai ELE falls well short of establishing how a noninfringement analysis of Tower's device in a prior case relates to the question of whether Shanghai ELE's device infringes in the current case.

### C. Shanghai ELE Failed to Establish that Tower's Expert Reports are Relevant and Necessary to Its Case

Shanghai ELE also demands unredacted copies of Tower's expert reports on damages, noninfringement, and claim construction. Tower addresses each report separately below.

#### 1. Shanghai ELE's Damages Theories Are Too Tenuous at This Time to Permit Discovery of Tower's Expert Report on Damages

Shanghai ELE asks the Court to permit discovery of Tower's competitively-sensitive financial information with nothing more than a listing of a few potential patent damages theories mentioned by TRC in the early stages of the underlying Shanghai ELE v. TRC action. This is precisely the type of discovery that many courts--including the Federal Circuit--have ruled against because of its potential for abuse, particularly when, as here, discovery is sought from a nonparty competitor. The Federal Circuit in Micro Motion Inc. v. Kane Steel, Inc. cautioned against allowing discovery of a nonparty "simply because its patent infringement complaint against another seeks damages." Micro Motion at 1328 ("a claim for damages or even lost profit damages in itself does not provide a mantle of relevancy"). As another example, in Allen v. Howmedica Leibinger, GmbH, the court refused to enforce a subpoena that would have required a nonparty to produce financial information, reasoning that the patentee's conclusory allegations of "lost market share" and "reduced price" failed to demonstrate that the information was relevant and necessary to support its damages theory. 190 F.R.D. 518, 524 (W.D. Tenn. 1999). The Allen court explained that it was "reluctant to authorize discovery of this nature until the

trial court has at least recognized the viability of [the patentee's] damage theory under the facts of this case." Id.

Shanghai ELE's damages arguments are even more speculative than the patentee's arguments in Allen, because Shanghai ELE, as the accused infringer, does not determine or have any control over which damages theory TRC will pursue in the underlying action. To justify its request, Shanghai ELE has only recited TRC's possible theories of "lost profits, price erosion and lost sales." Because Shanghai ELE does not bear the burden of establishing damages, and because TRC has not specified its damages position in the early stages of the case (only six months the complaint was filed), Shanghai ELE cannot state which damages theories TRC will pursue or what theories the Florida court will consider viable. If and only if Tower is compelled to produce its expert report on damages, such production should be delayed under infringement liability has been established in the underlying Shanghai ELE v. TRC action.

**2. Tower's Expert Report on Noninfringement in the TRC v. Tower Litigation Does Not Relate to the Question of Whether Shanghai ELE's Device Infringes**

Tower produced a redacted version of its expert report on noninfringement, but Shanghai ELE claims it is entitled to an unredacted version. For the reasons explained above in connection with Tower's summary judgment brief on noninfringement, Shanghai ELE has not and cannot show that Tower's expert report on noninfringement is relevant because Tower's device is not at issue in Shanghai ELE's underlying action against TRC. In other words, nothing in Tower's expert report on noninfringement relates to the underlying action (except the court's claim construction which is cumulative). Tower nevertheless prepared and produced a redacted version that omits Tower's confidential product information and information covered by the protective order in the TRC v. Tower action.

### 3. Tower Produced its Expert Report on Claim Construction in Unredacted Form

Tower produced an unredacted copy of its expert report on claim construction to Shanghai ELE on October 11, 2007. There appears to be no dispute with respect to this report.

### D. Tower Already Produced Prior Art

Tower produced four prior art patents in response to the subpoena, but Shanghai ELE contends that Tower should have produced more prior art related to the '337 patent because TRC identified "over four dozen patents" in response to an interrogatory served in the TRC v. Tower action. (Motion, p. 11). As Tower explained to Shanghai ELE before Shanghai ELE filed this Motion, Tower has no more responsive documents in its possession, custody, or control, so it has nothing more to produce. (Motion, Ex. E) ("Tower will produce Tower's prior art to the '337 patent")(emphasis added).

### E. Interrogatory Responses, Depositions, and Deposition Exhibits

Although Tower produced certain interrogatory responses already, Shanghai ELE demands that Tower be "compelled to produce all interrogatory responses from the TRC v. Tower Litigation in unredacted form," but offers no basis for relevance or need beyond this broad conclusory statement. Shanghai ELE does not identify any particular interrogatory, which collectively cover a wide range of topics many of which are completely unrelated to the underlying action. For example, Tower redacted portions of its response to Interrogatory No. 12 as non-responsive because it requested details of Tower's tortious interference counterclaim in the TRC v. Tower action. Shanghai ELE does not explain how tortious interference (or any other topic covered by the interrogatories) might become relevant in the underlying action.

Similarly, although Tower already produced certain deposition testimony, Shanghai ELE demands that Tower be compelled to produce additional deposition transcripts but, again, does

not articulate any basis for relevance or even contest Tower's explanation for withholding the information. For example, Tower explained that it did not produce the deposition transcripts of four Tower witnesses because they "are directed to Tower products and business operations, and not the '337 patent." (Motion, Ex. E). Likewise, Tower produced a redacted copy the deposition transcript of its expert witness, Dr. Thomas Keim. The redactions in Dr. Keim's transcript relate to information covered by the protective order in the TRC v. Tower action. In its Motion, Shanghai ELE states that it is entitled to documents (including deposition transcripts) and that "Tower cannot rightfully limit its production to only documents it considers, 'related to the '337 patent.'" (Motion 12). Shanghai ELE does not explain, however, how documents unrelated to the '337 patent are relevant to the subject matter involved in the underlying Shanghai ELE v. TRC action.

## III. NEITHER PARTY IN THE UNDERLYING LITIGATION HAS AN INCENTIVE TO DEFEND TOWER'S INTERESTS WHEN ISSUES OF CONFIDENTIALITY ARISE IN THE UNDERLYING FLORIDA ACTION

Shanghai ELE argues that the Shanghai ELE v. TRC protective order expressly covers third party productions and therefore addresses Tower's confidentiality concerns. Putting aside issues of relevance, the protective order could not protect Tower's interests in the underlying Shanghai ELE v. TRC action because both parties in the Florida action are direct competitors of Tower that have no incentive to defend Tower's interests should issues of confidentiality arise during trial or otherwise. See Allen, 190 F.R.D. at 526. Even if Tower becomes aware of such a confidentiality issue, it may have no standing to challenge the Florida court's decisions as to which documents, or parts of documents, are confidential. Id. Despite Shanghai ELE's assurances, there remains a substantial risk of harm to Tower.

## IV. CONCLUSION

For the reasons discussed above, Shanghai ELE failed to demonstrate that the information it seeks from Tower, a nonparty, is relevant and necessary to the underlying Florida action and there is a substantial risk of harm from disclosure of the confidential information. Shanghai ELE's motion should be denied.

Respondent,
Tower Manufacturing Corp.

By its attorneys:

/s/ Bruce W. Gladstone
Bruce W. Gladstone (#2643)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
Tel.: (401) 331-5700
Fax: (401) 331-5787
Email: bgladstone@cm-law.com

CERTIFICATION

The undersigned hereby certifies that on the 15th day of November, 2007 a copy of the foregoing was filed through the ECF system, and was served **electronically** to the following recipient identified as a registered participant on the Notice of Electronic Filing (NEF):

Jeffrey S. Brenner, Esquire
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
Phone: 401-454-1000
Fax: 401-454-1030
jbrenner@nixonpeabody.com

/s/ Bruce W. Gladstone

G:\pec\SHALO-TOWER 28123\Shanghai ELE\Tower's_mem_iso_objection_to_ELE's_motion_to_compel_compliance_with_subpoena.DOC